IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARS PRIP,

                        Plaintiff,                              OPINION AND ORDER

        v.                                                           14-cv-552-wmc

CHIEF DAVID ERWIN, OFFICER
JEFF CALHOUN, OFFICER CHRISTOPHER
WEISS, and OFFICER MICHAEL SYPHARD,

                        Defendants.

---

In this action brought under 28 U.S.C. § 1983, Lars Prip alleges that the Chief of the Wisconsin State Capitol Police Department, as well as other officers in that department, arrested him for protesting at the State Capitol in violation of his federal constitutional rights and Wisconsin law. Defendants have moved to dismiss Prip's complaint on several grounds. (Dkt. #15.) For the reasons that follow, the court will grant defendants' motion with respect to (1) all claims premised on Prip's January 17, 2013, arrest and (2) plaintiff's claim for injunctive relief. In all other respects, defendants' motion will be denied.

ALLEGATIONS OF FACT[1]

A. The Parties

Plaintiff Lars Prip is an adult resident of Beloit, Wisconsin, who occasionally engages in protests at the State Capitol. In particular, he attended a gathering of

---

[1] For purposes of deciding Prip's motion to dismiss, the court is required to: (1) accept as true all well-pled, factual allegations in the complaint, *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014); and (2) view them in the light most favorable to the non-movant, *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

individuals who met on weekdays at noon to sing protest songs in the State Capitol rotunda or sometimes outside on the Capitol steps.  As this gathering began to take on a life of its own, it became known as the "Solidary Sing Along," and the group as the "Solidarity Singers."  Having been repeatedly arrested as described below, Prip began to attend the Solidarity Sing Alongs less frequently because of the threat of arrest.

Defendant David Erwin is the Chief of the Wisconsin State Capitol Police.  In that capacity, he is responsible for enforcing the Department of Administration's rules relating to the use of state property, including the Wisconsin State Capitol building.  Plaintiff alleges that Erwin has policy-making authority over the implementation of the rules relating to the use of the State's property, or he has been delegated such authority by the Secretary of the Department of Administration.  Erwin is being sued in both his individual and official capacity.

Capitol Police Officers Jeff Calhoun, Christopher Weiss and Michal Syphard are also named as defendants for enforcing that policy.  All three are sued in their individual capacity.

### B. Background

Mass protests were held in the State Capitol throughout the Spring of 2011 in response to legislation restricting the collective bargaining rights of public employees. The Solidarity Sing Along began as part of those protests, but continued long after the mass protests had subsided.

In July 2012, Erwin was appointed Chief of the Wisconsin State Capitol Police. Upon assuming that position, Erwin publicly announced his intent to "clamp down" on protesters.  (Am. Compl. (dkt. #11) ¶ 13.)  In September 2012, Capitol Police began issuing citations to protestors in the Capitol, including the Solidarity Singers, for engaging in rallies and/or displaying signs.  Sometime thereafter, Erwin implemented a policy of arresting anyone associated with the Solidarity Sing Along.[2]  As part of that policy, individuals associated with the Solidarity Sing Along were handcuffed, searched and detained in the basement of the State Capitol.  From there, individuals were either released or transported to the Dane County jail for booking.

## C.  Events of January 17, 2013

On January 17, 2013, Prip attended the Solidarity Sing Along, holding a handmade cloth sign that stated, "DEMOCRACY IS DEAD ~ CRONY CAPITALISM RULES," in protest of Act 10 and the Walker Administration's stance against certain public union rights.  (Am. Compl. (dkt. #11) ¶ 22.)  Prip alleges that under Erwin's command and authority, Capitol police arrested protestors that day.

Just after noon on the 17th, Prip was approached by an officer and told to surrender his sign, which he did.  About fifteen minutes later, Prip approached a friend and fellow protester who was hanging a banner on the second floor of the rotunda. When Prip noticed several Capitol police officers around his friend, he stopped and

---

[2] While plaintiff alleges that Erwin's arrest policy began in July 2013, the court assumes that plaintiff intended to plead that Erwin implemented the arrest policy at least by January 2013, when he was first arrested.

remained some distance away.  Officer Syphard came up to Prip and placed his hand on Prip's chest, and warned Prip not to come closer.  Officer Syphard then told Prip to move backwards.  However obstinate it may seem, Prip alleges this instruction "conflicted with his prior command to stand still."  (Am. Compl. (dkt. #11) ¶ 26.)  So instead of moving backwards, "Prip simply shifted his weight by moving his foot sideways to stand at parade rest, as he was taught to do in the Marines when he was standing still."  (*Id.*)

Syphard then arrested Prip without a warrant, handcuffed him and escorted him to the lower level of the State Capitol, where he remained in handcuffs for approximately 20 minutes.  Syphard then handed Prip a citation that referred to Wis. Stat. § 946.41,[3] and stated, "SCPF Officers were making contact w/ another subject and Prip was standing too close.  Prip refused to back up after being told to back up."  (Am. Compl. (dkt. #11) ¶ 30.)  Syphard then escorted Prip out of the Capitol and told him that he was not allowed to return that day.  Despite the citation, charges were apparently never filed with a court.  Nevertheless, Prip alleges that Officer Syphard arrested and banned him from the Capitol because of his participation in the protests.

### D. Events of July 25, 2013

On July 25, 2013, Prip again attended the Solidarity Sing Along.  On that day, he was in the rotunda on the ground floor.  Prip "purposefully and symbolically" placed a gag over his mouth while wearing a Veterans for Peace vest.  Prip was holding an

---

[3] That section provides in pertinent part:  "(1) Except as provided in subs. (2m) and (2r), whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor."

American flag, which he contends is an important symbol for him as a veteran of the Marines. Prip alleges that under Erwin's command and authority, Capitol police again arrested protestors that day.

Capitol police moved into the rotunda and began arresting members of the media, onlookers and protestors. At that time, Prip alleges that he "did not move," but rather "remained calm and presented no threat or danger to anyone." (Am. Compl. (dkt. #11) ¶ 38.) Nevertheless, Officer Calhoun pushed Prip against people behind him. Still, Prip maintains, he "did not react, other than trying to keep his footing after being pushed by Officer Calhoun." (*Id.* at ¶ 39.) At that point Officers Weiss and Calhoun allegedly approached Prip and placed him in wrist locks. As a result, Prip alleges that the flag he was holding fell onto the ground and that Weiss trampled on it.

Prip further alleges that the two officers "forced [his] hands into wrist locks behind his back with such force that [he] believed they were going to break his wrists." (Am. Compl. (dkt. #11) ¶ 42.) The officers proceeded to push Prip "down a hallway so abruptly that he stumbled," and that they "forced him around a corner towards a downward staircase, where he teetered on the first step leading down to the basement level." (*Id.* at 44.) Despite fearing that the officers were going to throw him down the stairs, Prip maintains that he "remained calm and did not pose a risk to the officers." (*Id.*)

Another officer then told Calhoun and Weiss to take Prip down the elevator, not the stairs, at which point they "pulled Mr. Prip off the stair edge by his painful wrists." They then replaced the wrist locks with steel handcuff, still placed behind his back, and

5

marched him toward the elevator.  (Am. Compl. (dkt. #11) ¶ 45.)  Prip alleges that the handcuffs were "excruciatingly tight."  (*Id.*)

Once in the basement processing area, Prip repeatedly told Calhoun and Weiss that "the handcuffs were too tight and that he had a pre-existing VA disability stemming from exposure to Agent Orange that causes numbness in his hands."  (*Id.* at ¶¶ 48, 50.)  Prip alleges that Calhoun and Weiss ignored his pleas to remove or loosen the handcuffs.  After some time, Prip was able to speak to a State Patrol officer in the basement about his handcuffs.  That officer then informed Calhoun and Weiss that Prip's handcuffs were too tight.  Calhoun and Weiss then replaced Prip's handcuffs, but Prip alleges that those handcuffs were also placed tightly and the pain continued.  The officers similarly ignored his repeated requests to loosen or remove the handcuffs.  Prip estimates that he was held in handcuffs for approximately one hour.

Prip was never read his Miranda rights, nor was he allowed an attorney when he asked for one.  Prip was then transported to Dane County jail for booking.  At that point his handcuffs were finally removed, but his "wrists had deep red groove marks from the handcuffs and his hands were numb."  (Am. Compl. (dkt. #11) ¶ 56.)[4]

Prip was interrogated by a Dane County Sheriff's deputy, physically searched, fingerprinted, and photographed for a mug shot.  His clothes and belongings also were taken and he was issued jail clothes.  Prip was then placed in the common holding cell for about three hours and eventually released after posting a $300 bond.  The bond receipt

---

[4] Prip was subsequently treated at the VA Hospital for wrist pain and told that he should wear wrist splints.

notes the charge of "946.41(1) Resisting or Obstructing."  Prip never received a citation or was otherwise charged with any unlawful conduct for the events on July 25, 2013. Prip alleges that his detention was motivated by "ill will toward the protestors, including Mr. Prip," and intended "to delay him for the sake of delay, or for another improper purpose."  (*Id.* at ¶ 65.)

## OPINION

Based on these facts, Prip asserts claims for:  (1) false arrest in violation of the Fourth Amendment against all defendants based on both arrests; (2) excessive force also in violation of the Fourth Amendment against all defendants based on both arrests; (3) retaliation in violation of the First Amendment against all defendants based on both arrests; (4) intentional use of force against Calhoun and Weiss; (5) false arrest against Calhoun and Weiss; and (6) false imprisonment against Calhoun and Weiss.  Defendants seek dismissal of Prip's federal claims based on qualified immunity.   Additionally, defendant Erwin seeks dismissal of those same claims for failure to allege sufficiently his involvement.  As for Prip's state law claims, defendants seek dismissal under the doctrine of discretionary immunity.[5]   Finally, defendants challenge Prip's standing to pursue injunctive relief, which, if the court agrees, would bar any claim against Erwin in his official capacity.   The court will address each challenge in turn.

---

[5] In the alternative, if the court were to dismiss the federal law claims, defendants ask the court to decline to exercise its supplemental jurisdiction over any remaining state law claims.

## I. Qualified Immunity

Because "qualified immunity is the ability to be free from suit, not merely a defense from liability . . . , the question of immunity should be decided at the earliest possible stage." *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000).[6]  Still, in reviewing a qualified immunity defense raised in a motion to dismiss, "the only facts before [the court] are those alleged in the complaint, which [the court is] obliged to accept as true." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994).

To determine whether defendants are entitled to qualified immunity at the motion to dismiss stage, the court must consider: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right; and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "A plaintiff can show that a right is 'clearly established' by statute or constitution in at least two ways: (1) he can point to a clearly analogous case establishing the right to be free from the conduct at issue; or (2) he can show that the conduct was 'so egregious that no reasonable person could have believed that it would not violate established rights.'" *Beaman v. Freesmeyer*, 776 F.3d 500, 508-09 (7th Cir. 2015) (quoting *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001)).   At least with respect to the alleged facts surrounding Prip's January 17, 2013, arrest, defendants' assertion of qualified immunity falls short of this standard.

---

[6] "The notice pleading requirements of Rule 8 do not require that a plaintiff anticipate the assertion of qualified immunity by the defendant and plead allegations that will defeat that immunity." *Jacobs v. City of Chi.*, 215 F.3d at 765 n.3.

### A. Alleged 2013 False Arrests

Prip asserts a claim of false arrest:  (1) against Syphard on January 17th, (2) against Calhoun and Weiss on July 25th, and (3) against Erwin on both dates.  To survive a motion to dismiss, Prip must allege facts that, if true, would demonstrate that defendants lacked probable cause to arrest him.  *Harney v. City of Chi.*, 702 F.3d 916, 922 (7th Cir. 2012).  "Probable cause exists if 'at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] . . . that the suspect has committed, is committing, or is about to commit an offense."  *Id.* (quoting *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011)).  The court will address the alleged facts and circumstances confronting the officers at the time of each arrest.

#### i.    January 17th Arrest

In his complaint, plaintiff alleges that he approached a friend and fellow protester, who was hanging a banner on the second floor of the rotunda.  When Prip noticed several Capitol police officers around his friend, he stopped and stayed some distance away.  Officer Syphard came up to Prip and placed his hand on Prip's chest, warning Prip not to come closer.   Officer Syphard then told Prip to move backwards.   Prip acknowledges instead of moving backwards, "Prip simply shifted his weight by moving his foot sideways to stand at parade rest, as he was taught to do in the Marines when he was standing still."  (*Id.*)

In the complaint and as emphasized in his opposition brief, Prip viewed the two commands as conflicting.  Syphard told him to not come closer, and then told him to

move backward.  Far from conflicting, of course, Syphard's instruction simply required two steps:  (1) stop, and (2) move backward.  This is as elementary as a kindergarten teacher instructing her class to stay still in a line and then proceed forward out to recess, or one would think, as a drill sergeant commanding a platoon to "halt" and "to the rear, march."

Regardless of what Prip was thinking, an objectively reasonable officer would not view these instructions as conflicting.  On the contrary, an objective officer might reasonably interpret Prip's actions as a deliberate, conscious decision not to comply with an officer's order, if not to obstruct the arrest of his friend.[7]  However noble Prip or others may view his conduct, as an act of civil disobedience, it does not render him immune from arrest.  If anything, under these circumstances, an officer might reasonably conclude that an arrest was what Prip wanted.  As pled then, Syphard had a reasonable basis for concluding that Prip was violating Wis. Stat. § 946.41, and therefore he had probable cause (or at least arguable probable cause) for Prip's arrest.[8]  *See State v. Christopher*, 44 Wis. 2d 120, 124, 170 N.W.2d 803, 805 ("[Wis. Stat. §946.41(1)]

---

[7] In his opposition brief, plaintiff maintains that "Mr. Prip complied with the orders." (Pl.'s Opp'n (dkt. #19) 11.)  The court, however, is required to look at the allegations in the complaint, not his argument in response.  *Agnew v. Nat'l Collegiate Athletic Ass'n*,  683 F.3d 328, 347-48 (7th Cir. 2012) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]") (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)).

[8] "When the constitutionality of an action depends on the existence of probable cause, the officer must have had 'arguable probable cause' for qualified immunity to attach.  Thus, even when an officer lacks probable cause, he is still entitled to qualified immunity when a reasonable officer 'could have reasonably believed that probable cause existed in light of well-established law.'" *Bruce v. Guernsey*, 777 F.3d 872, 878-79 (7th Cir. 2015) (citing *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)).

10

renders unlawful any knowing resistance or obstruction of a law officer while such officer is doing any act in his official capacity and with lawful authority."); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Accordingly, based on Prip's allegations in the complaint, the court will grant defendants' motion to dismiss the claim of false arrest on January 17, 2013.

### ii. July Arrest

The allegations surrounding the July 25, 2013, arrest compel a different outcome. On that date, Prip alleges that officers moved into the rotunda and began arresting members of the media, onlookers and protestors. Prip alleges that he "did not move," but "remained calm and presented no threat or danger to anyone." (Am. Compl. (dkt. #11) ¶ 38.) Even as Officer Calhoun pushed Prip against people behind him, Prip alleges that he "did not react, other than trying to keep his footing after being pushed by Officer Calhoun." (*Id.* at ¶ 39.)

From these allegations, defendants contend that Prip "admits that he literally obstructed the police when he failed to move while police officers were making arrests, such that a police officer and Mr. Prip made physical contact." (Defs.' Opening Br. (dkt. #8) 13 (citing Compl. (dkt. #1) ¶¶ 38-40).) Plaintiff, however, does *not* allege that he was directed to move away from Officer Calhoun or out of the rotunda, nor is this a reasonable inference from the allegations in his complaint. Instead, plaintiff alleges that he was arrested for simply standing in the rotunda without having been ordered to do

11

otherwise. Perhaps, the facts will fall out as defendants describe -- that there was a disperse order that Prip failed to heed -- but on the *alleged* facts, the court finds that Prip has stated a viable claim of false arrest on July 25, 2013. *See Kernats*, 35 F.3d at 1175 ("[T]he only facts before [the court] are those alleged in the complaint, which [the court is] obliged to accept as true.").

While the question remains whether the right asserted by Prip was clearly established at the time of his arrest, the answer is of no help to defendants. Long before July 25, 2013, the law was clearly established that a person could not be arrested without probable cause. *See Henry v. United States*, 361 U.S. 98, 100 (1959) ("The requirement of probable cause has roots that are deep in our history."). At this time, therefore, the court will deny defendants' motion for qualified immunity with regard to Prip's arrest on July 25, 2013.

### B. Excessive Force

Plaintiff also asserts a Fourth Amendment excessive force claim arising out of both arrests. "[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs*, 215 F.3d at 773. If officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them," then they do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "Determining whether the force used to effect a particular seizure is

'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1 (1985)).   A court must look to the following factors when determining whether the amount of force used is reasonable:   "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (citing *Graham*, 490 U.S. at 396).   Therefore, the court will again review the specific facts and circumstances allegedly confronting the officers at the time of each arrest.

### i.    January Arrest

As for the arrest on January 17, 2013, plaintiff simply alleges that he was handcuffed.   He does not allege that the handcuffs were placed too tightly or otherwise caused discomfort.   Plaintiff nevertheless contends that the mere use of handcuffs was unreasonable under the factors identified in *Graham*.   (Pl.'s Opp'n (dkt. #19) 13.)

Citing *Brownell v. Figel*, 950 F.2d 1285 (7th Cir. 1991), defendants contend that "[t]his lack of injury supports denial of any excessive force claim related to the January 17, 2013 event."   (Defs.' Opening Br. (dkt. #8) 16.)   Since the *Brownell* decision, however, the Seventh Circuit has rejected the notion that an injury is necessary to find an excessive force claim.   *Kingsley v. Hendrickson*, 744 F.3d 443, 463 (7th Cir. 2014) (citing *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 470 n.3 (7th Cir. 1997), for

the proposition that the plaintiff "need not have been injured to have an excessive force claim")).

Still, plaintiff has not directed the court to any case finding an excessive force claim based merely on the *use* of handcuffs, at least without any claim that the handcuffs were applied in a way that inflicted unnecessary pain or injury.   To the contrary, excessive force claims in the Seventh Circuit that involve handcuffs actually focus on *how* they are used.   *See, e.g., Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) ("A person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury.") (citing *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003); *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009)).   Even if the mere use of handcuffs could form the basis of an excessive force claim, plaintiff fails to allege facts and circumstances that would make their use a clearly established violation of his Fourth Amendment rights at the time of his arrest.   If anything, as alleged, it would appear objectively reasonable to restrain an uncooperative individual who appeared to be interfering with another arrest. Accordingly, the court will grant defendants' motion to dismiss the excessive force claim arising out of plaintiff's January 17, 2013, arrest, finding that at minimum defendants are entitled to qualified immunity.

### ii.   July Arrest

Plaintiff's excessive force claim with respect to the July 25, 2013, arrest again fares better.   Plaintiff alleges that defendants Calhoun and Weiss placed wrist locks and two sets of handcuffs, all of which were "excruciatingly tight." (Am. Compl. (dkt. #11) ¶¶ 45,

48, 50.)  Prip also alleges -- contrary to defendants' characterization -- that he repeatedly complained about the tightness of the handcuffs and informed Calhoun and Weiss of a pre-existing hand injury.  (*Id.* at ¶¶ 48, 50, 51, 53-54.)  In addition, Prip alleges that he was left handcuffed in this condition for about an hour.  (*Id.* at ¶ 54.)  Finally, Prip contends that Calhoun and Weiss pulled him from the edge of the steps by his wrists and placed him at the top of the stairs in a way that made him fear careening down the stairs. (*Id.* at ¶ 45.)  The court finds these allegations sufficient to state a claim under the Fourth Amendment for excessive use of force.

As for the second prong of the qualified immunity defense, the principle at the time of his arrest was already "well established" that it was, at least in the Seventh Circuit, "unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes."  *Payne,* 337 F.3d at 780; *see also Herzog v. Vill. of Winnetka, Ill.,* 309 F.3d 1041, 1043 (7th Cir. 2002) (holding that refusal to loosen chafing handcuffs or shoving an arrestee would constitute actionable excessive force).  Accordingly, the court will deny defendants' motion to dismiss plaintiff's excessive force claim with respect to his July 25, 2013, arrest.

## C. First Amendment Retaliation

Next, defendants seek to dismiss plaintiffs' First Amendment retaliation claim because "there is no clearly established free speech right for failing to comply with police

instructions." (Defs.' Opening Br. (dkt. #8) 19.)   At least as the court can discern, however, this argument fundamentally misapprehends plaintiff's actual claim.   Prip alleges that he was arrested in retaliation for his exercise of First Amendment rights, not that he had a First Amendment right to disobey police orders.

A state actor who engages "in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).   To state a claim for retaliation under the First Amendment, Prip must allege that: (1) he was engaged in a constitutionally protected activity; (2) he suffered a deprivation that would likely deter a person from engaging in the protected activity in the future; and (3) the protected activity was a motivating factor in defendants' decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

Plaintiff alleges that he was engaging in lawful protests against Governor Walker and efforts to limit the collective bargaining rights of public employees.   (Am. Compl. (dkt. #11) ¶¶ 22, 37.)   Moreover, Prip alleges that he was arrested because of those actions.   (*Id.* at ¶¶ 33, 65, 71.)   These allegations are sufficient to state a claim for First Amendment retaliation. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 348 (2010) ("If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech.").

Defendants argue that plaintiff's claim fails if plaintiff's arrest is "otherwise supported by probable cause." (Defs.' Opening Br. (dkt. #8) 20 (citing *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012)).)   In *Reichle*, the Supreme Court granted

certiorari to decide, in part, whether probable cause acted as a complete bar to a First Amendment retaliatory arrest claim (as opposed to a retaliatory prosecution claim), but ultimately held only that the question was unsettled to extend qualified immunity to the arresting secret service agents. *Reichle*, 123 S. Ct. at 2095-96; *see also Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012) (explaining that "[t]he case law is unsettled on whether probable cause is a complete bar to First Amendment retaliatory *arrest* claims," in part because, the Court in *Reichle* skipped the first prong of the qualified immunity test, and held that "it was not clearly established that an arrest supported by probable cause could violate the First Amendment.").

Accordingly, neither the Supreme Court, nor the Seventh Circuit (as far as this court can tell), has held that probable cause would not bar a First Amendment retaliatory arrest claim. Certainly, on January 17, 2013, the law was (and remains) unsettled on this question. Accordingly, the court will grant qualified immunity to defendants for any First Amendment claim premised on the events on January 17, 2013, at least in light of the court's earlier finding that plaintiff has alleged facts sufficient to cause a reasonable officer to believe that he was engaging in criminal conduct at the time of that arrest.[9] As for the July 25, 2013, arrest, however, plaintiff *has* alleged sufficient facts to support a false arrest claim. *See Gullick v. Ott*, 517 F. Supp. 2d 1063, 1079 (W.D. Wis. 2007) (denying summary judgment of First Amendment retaliation claim on qualified immunity grounds, in part, because of dispute of fact as to whether probable cause existed). At

---

[9] In light of the court's decision to grant qualified immunity for all claims premised on the January 17, 2013, arrest, the court will dismiss defendant Michael Syphard from this action.

least at the motion to dismiss stage, therefore, plaintiff's First Amendment retaliation claim will go forward.

## II. Discretionary Immunity for State Law Claims

Plaintiff also asserts state law claims for intentional use of force, false arrest and false imprisonment against defendants Calhoun and Weiss.  Defendants contend that these claims should be dismissed as well under the common law doctrine of discretionary immunity.[10]  "The general rule acknowledged in Wisconsin is that a public officer or employee is immune from personal liability for injuries resulting from acts performed within the scope of the individual's public office." *C.L. v. Olson*, 143 Wis. 2d 701, 710, 422 N.W.2d 614, 617 (1988).  There are, of course, limits to this general rule.  Most notably, "the doctrine of immunity affords no protection to a public officer or employee for (1) the negligent performance of a ministerial duty or (2) conduct that is malicious, willful and intentional." *Id.* at 710-11, 422 N.W.2d at 617.[11]

Here, plaintiff alleges generally that defendants acted "intentionally, maliciously and willfully." (Am. Compl. (dkt. #11) ¶¶ 95, 102, 107.)  As defendants note, the mere

---

[10] Because the "elements of, and the defenses to, a federal cause of action are defined by federal law," this immunity obviously does not apply to the federal constitutional claims brought pursuant to 42 U.S.C. § 1983.  *See Howlett v. Rose*, 496 U.S. 356, 375 (1990) (holding that a state's decision to extend immunity "over and above [that which is] already provided in §1983 . . . directly violates federal law").

[11] "A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Bd. of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610, 622 (1976).

recitation of a legal standard is insufficient to meet the requirements of Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").   As previously discussed, however, at least with respect to the events on July 25, 2013, plaintiff has alleged specific facts that would support a finding that defendants Calhoun and Weiss: (1) arrested him without probable cause; (2) refused to loosen or adjust his handcuffs despite Prip repeatedly complaining about them being too tight and informing both that he suffered from a pre-existing hand injury; and (3) detained Prip on a minor charge for four hours.  This is enough for a reasonable jury to infer malice, willfulness and intent from these facts.  *See Alexander v. United States*, 721 F.3d 418, 423-24 (7th Cir. 2013) (examining Indiana law and noting that "malice may be inferred from a total lack of probable cause"); *Magmer v. Renk*, 65 Wis. 364, 27 N.W. 26, 29 (1886) ("In an action to recover damages for malicious prosecution, the jury may infer the existence of malice from the total want of probable cause.").


## III.  Erwin's Liability

Defendants further challenge plaintiff's claims against defendant Erwin in both his official and individual capacity.  As plaintiff acknowledges, a claim against Erwin in his official capacity is limited to injunctive relief.  (Pl.'s Opp'n  (dkt. #19) 34.)  A state, its agencies and officials are only subject to suit in *federal* court if one of the following conditions is present: "(1) a state official is sued for prospective equitable relief under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); (2) Congress abrogates the State's immunity

pursuant to its powers under section 5 of the Fourteenth Amendment; or (3) the State consents and waives its immunity." *Nelson v. Miller*, 570 F.3d 868, 883 (7th Cir. 2009). In limiting his claim against Erwin in his official capacity to injunctive relief, plaintiff implicitly acknowledges the application of the first exception identified in *Nelson*. The court takes up defendant's challenge to plaintiff's *standing* to bring a claim for injunctive relief below.

As for any individual capacity claim against Erwin, supervisors cannot be "vicariously liable" for the conduct of their subordinates. *See Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (*en banc*), *cert. denied*, 133 S. Ct. 2796 (2013). "[K]nowledge of subordinates' misconduct is not enough for liability. The supervisor must want the forbidden outcome to occur." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009)). Absent allegations that a supervisory official personally caused, participated in, or had a reasonable chance to stop the alleged harm from occurring, a plaintiff fails to assert a claim for liability on the part of that supervisory official. *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

Here, plaintiff alleges that "[b]eginning in July 2013, Chief Erwin implemented his policy of arresting anyone he associated with the Solidarity Sing Along. Chief Erwin's policy was to handcuff, search, and detain those protestors the Capitol Police associated with the Solidarity Sing Along." (Am. Compl. (dkt. #11) ¶ 15; *see also id.* at ¶¶ 13-14, 21, 36.)  At the pleadings stage, the court finds this allegation raises a reasonable inference that Erwin directed officers to arrest without probable cause to do so. *See McCree v. Sherrod*, 408 Fed. Appx. 990, 993, 2011 WL 467005, at *2 (7th Cir. Feb. 10, 2011)

(explaining that "knowledge and intent can be pleaded generally" for liability of supervisor under § 1983) (citing *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)).   The court is skeptical that plaintiff will be able to prove this individual capacity claims against Erwin, but that is an issue for another day.

## IV.  Standing for Injunctive Relief

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).   In *Brown v. Bartholomew Consolidated School Corporation*, 442 F.3d 588 (7th Cir. 2006), the court held that "once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot." *Id.* at 596.

In bringing a claim for injunctive relief, plaintiff seeks to challenge Erwin's alleged arrest policy.  (Am. Compl. (dkt. #11) ¶¶ 15-17, 73, 84, 86.)  While plaintiff alleges that this policy remains in effect (*id.* at ¶ 72), defendants direct this court to a November 2013 administrative rule setting forth a permit process and further represent that "[a]rrests stopped as a result of a policy change even before the rule was formally approved."  (Defs.' Second Opening Br. (dkt. #16) 9.)  *See also* Wis. Admin. Code § Adm 2.04(1m).  In response, plaintiff simply points to the allegation that "Chief Erwin has not

21

abrogated or amended his policy of arresting the protestors and the arrest could resume at his command and authority at any time." (Am. Compl. (dkt. #11) ¶ 73.) Even at the motion to dismiss stage, this court may take judicial notice of an administrative rule demonstrating that there has been a change in policy since the time of Prip's arrests. *See, e.g., Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment."). Accordingly, the court finds that plaintiff has failed to meet his burden of demonstrating an ongoing threat, and the court will dismiss any claim for injunctive relief as moot.

ORDER

IT IS ORDERED that:

1)  defendants' motion to dismiss is GRANTED as to (a) any claim premised on the events of January 17, 2013, and (b) plaintiff's claim for injunctive relief against defendant Erwin in his official capacity, and DENIED in all other respects;

2)  defendant Michael Syphard is dismissed from this action; and

3)  the clerk's office is directed to schedule a telephonic conference with Judge Crocker to reestablish a pretrial schedule and reset a trial date.

Entered this 15th day of July, 2015.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge
